**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANGELA R. POSEY,
Plaintiff-Appellant,

v.

E. I. DUPONT DE NEMOURS AND
COMPANY, INCORPORATED,
Defendant-Appellee.

No. 98-1719

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CA-96-2562-3-17BD)

Submitted: January 19, 1999

Decided: March 19, 1999

Before WIDENER, WILKINS, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James E. Bell, III, Eugene C. Fulton, Jr., BELL & MOORE, P.A.,
Summer, South Carolina, for Appellant. Gardner G. Courson, Laura
H. Walter, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P,
Atlanta, Georgia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Angela R. Posey appeals from the district court's grant of summary judgment in favor of Defendant E. I. DuPont de Nemours & Company (DuPont), in Posey's employment discrimination action filed under the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-12213 (West 1995 & Supp. 1998), and 42 U.S.C. § 2000e-3 (1994) (retaliatory discharge). Finding no error, we affirm.

I.

Posey began work at DuPont's nylon manufacturing plant in Camden, South Carolina in 1973, where she was employed principally as a clerical worker. Her duties included work with computers, tracking shipments, and entering data.

During Posey's tenure at DuPont, the company underwent a number of reductions in force, cutting its workforce at the Camden plant from 2265 employees in 1990 to 1722 in 1993 when Posey was terminated. Additionally, in 1991 DuPont took steps to centralize its computer operations in Richmond, Virginia, thereby phasing out Posey's Camden position. Nonetheless, in an effort to retain those employees whose positions had been eliminated, DuPont created four new manufacturing support jobs, one of which was given to Posey in August 1993. Unlike Posey's previous job, the new position required employees to work in rotating weekly shifts that accommodated the Camden plant's twenty-four hour operations schedule.

Posey was diagnosed in November 1992 with a mild case of systemic lupus erythematosus (lupus). Lupus is primarily a disease of the connective tissues, manifesting itself by way of skin lesions, arthritis, and joint pains. The disease may present symptoms of fatigue, fevers, and weakness. See STEDMAN'S MEDICAL DICTIONARY 1001 (26th ed.

2

1995). Although Posey suffered some of the symptoms of the disease, these symptoms did not interfere with her job performance until the 1993 move to a rotating shift schedule.[1] When Posey began to experience the flare-up in lupus symptoms, her physician, Dr. Robert Turner, contacted DuPont at Posey's request and informed DuPont of her condition. He also indicated that it would be in Posey's best interest to avoid shift work or, at a minimum, reduce shift changes to no more than once a month. (J.A. at 549).

Upon learning of Posey's circumstances, DuPont convened its Plant Placement Committee to discuss possible solutions. The committee considered allowing Posey to alternate shifts less often, but ultimately determined this solution to be unworkable. This decision was based on the fact that in order to accommodate Posey, the plant would also have to alter the rotation schedule of the three other shift workers who fill Posey's position during other shifts. By adjusting the schedule of these four employees the company would disrupt the continuity of the shift crews, and the committee deemed this disruption unacceptable.

DuPont also attempted to find another position within the company that would allow Posey to work a regular schedule. However, no position could be found, and as a result the committee recommended that Posey be terminated. Posey unsuccessfully pursued internal appellate procedures, but she was released from the company in September 1993. She filed this action in the district court alleging unfair discrimination under the ADA, retaliation, and breach of contract.

II.

We review the district court's grant of summary judgment de novo. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 300 (4th Cir. 1998).

In her appeal, Posey claims that the district court erred in its determination that she was not disabled within the bounds of the ADA. We

_____

[1] Posey's physician, Dr. Turner, testified that rotating shifts exacerbated her condition. According to Turner, lupus patients need to follow a consistent schedule in order to maintain regular cortisol levels. Disruption of these cortisol levels could lead to a flare up of lupus symptoms.

disagree. Posey cannot make out a prima facie case of discrimination under the ADA because she cannot show that she is a member of a protected class by virtue of a disability. See Halperin v. Abacus Technology Corp., 128 F.3d 191, 196-97 (4th Cir. 1997). In order to make out a case of disability under the ADA, Posey must show that she: (1) suffers from a physical or mental impairment that (2) substantially limits a major life activity. See 42 U.S.C.A. § 12102(2). The district court correctly determined that Posey failed to show a substantial limitation of a major life activity, including working. Although we note that lupus is a disease with the potential to disrupt an individual's life activities, both Posey's treating physician and the independent medical examiner (IME) determined that Posey suffered only mild symptoms of the disease.[2]

We find no error in the district court's determination that Posey's condition did not affect the life activity of working. Although her circumstances prevented her from performing the duties associated with shift work, as well as her ability to stand or walk for extended periods of time, these alone do not create a substantial impairment under the ADA. See Forrisi v. Bowen, 794 F.2d 931, 934-35 (4th Cir. 1986). Rather, the pertinent question in determining whether a plaintiff is substantially limited is whether that individual is significantly restricted in her ability to perform a "class of jobs or a broad range of jobs in various classes, as compared to the average person having comparable training, skills and abilities." See Cline, 144 F.3d at 302 (quoting 29 C.F.R. § 1630.2(j)(3)(I)) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working"). Posey's treating physician testified that she was capable of working in positions that did not involve shift work. (J.A. 884-85). Indeed, Posey herself admitted that the only impediment to employment is her inability to do shift work. Considering these factors, we find that the limitation does not substantially impair Posey's life activity of working.

As the magistrate judge noted in his Report and Recommendation, "[i]n order to pursue a claim under the ADA in this Court, Plaintiff must show a violation of that statute, no[t] merely that the Defendant's actions may have been unjustified or unfair." (R.R. at 16).

_____

[2] The IME found the plaintiff to be "in near remission." (J.A. at 898).

4

Because Posey has failed to show that she is a member of the class protected by the ADA, the district court properly dismissed the claim.

Posey next asserts that the district court erred in dismissing her retaliatory discharge claim. Posey claimed that her discharge was in retaliation for a discrimination claim she filed against DuPont in 1992 with the South Carolina Labor Board.[3] In order to establish a prima facie case of retaliatory discharge under 42 U.S.C.§ 2000e-3 (1994), a plaintiff must show that: (1) she engaged in protected activity such as filing an EEO complaint; (2) the employer took adverse employment action against the plaintiff; and (3) a causal connection existed between the protected activity and the adverse action. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). The district court noted that Posey simply failed to make out any causal connection between her actions before the Labor Board and the actions of DuPont. Specifically the court noted that more than fourteen months elapsed between the two events, and during that time DuPont had actually created a new position for Posey to avoid having to discharge her as part of ongoing reductions in force. In her appeal, Posey argues that the court should have determined the time between events as nine months.[4] Under either time frame, however, Posey's own testimony belies this claim.[5] Therefore, the district court properly dismissed Posey's claim for retaliatory discharge.

_____

[3] Posey filed a claim in September 1992 based on gender discrimination for DuPont's decision to demote several employees (including Posey) as part of its restructuring. (J.A. at 253); (see also J.A. at 106-07, 111). As a result of the claim, DuPont compensated Posey for several months back pay representing the difference in salary between her old and new positions. Posey indicated in her deposition that she was satisfied with that outcome. (J.A. at 47-51).

[4] Posey argues that the controlling date should be based on the time the Labor Board concluded its action as opposed to the date when Posey filed her complaint.

[5] In her deposition, Posey was asked:

> "Okay. But you certainly don't claim that [D]uPont decided to end the job function just to get back [at] you because of your DOL claim?"

She responded: "No, I do not." (J.A. at 653).

Finally, we note that Posey has not preserved on appeal her state claims for breach of contract. Accordingly, we affirm the district court's grant of summary judgment in favor of DuPont. We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6